**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose R Frisby, et al., | No. CV-16-02599-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| Town of Mammoth, et al., | |
| Defendants. | |

In their third amended complaint, Plaintiffs Jose Frisby ("Frisby") and Phillip Smith ("Smith") (collectively "Plaintiffs") allege Defendant Don Jones ("Jones") terminated their employment with the Town of Mammoth (the "Town") in a manner that deprived Plaintiffs of their Fourteenth Amendment due process rights (Count One) and constituted employment discrimination based on Plaintiffs' Mexican origin (Count Two). (Doc. 29). Defendants Jones and the Town (collectively "Defendants") now move to dismiss. Since Plaintiffs have failed to allege facts sufficient to support a *Monell* claim against the Town in Counts One or Two, and have failed to allege facts suggesting Jones' termination of Plaintiffs was discriminatory, as alleged in Count Two, the Court will grant Defendants' motion as to these claims. But since Plaintiffs alleged sufficient facts suggesting Jones terminated their employment without notice and a chance to be heard, Defendants' motion will be denied as to Count One against Jones.

## BACKGROUND

Despite two prior attempts to coherently state the factual basis for their claims, the

allegations in Plaintiffs' Third Amended Complaint are still obscure. That said, Plaintiffs appear to allege the following. Plaintiffs are of Mexican origin. On approximately June 24, 2012, Frisby began working for the Town and, at all relevant times, was working full-time in a laborer position. (Doc. 29 at 3). Smith began working for the Town in approximately June of 2012 and, at all relevant times, was a permanent full-time classified service employee assigned to the Public Works Department. (*Id.* at 4).

Plaintiff allege that, since Frisby and Smith were permanent, full-time employees, the Town's personnel policies specified that they could only be disciplined "for cause" and specified that any involuntary termination would be "subject to prior notice and appeal." (*Id.* at 3, 4). The notice and appeal process was to follow a specific format, such that Frisby and Smith were entitled to: (1) "guaranteed written prediscipline notice of any proposed discipline," (2) "an opportunity to respond to any proposed discipline," (3) "written notice of discipline," and (4) "an appeal hearing process which included three distinct appeal decision levels; an initial appeal to the Town Manager or Delegatee, [a] second level consisting of a hearing before an independent Hearing Officer paid for by the Town of Mammoth that must be scheduled and occur within 30 days from the date of the notice of appeal, and a third level to the Mammoth Town Council." (*Id.* at 3).

Plaintiffs allege that, during their employment, they possessed the qualifications required for their jobs and performed their duties in a competent manner. (*Id.* at 4). Despite this, Plaintiffs allege that on approximately January 29, 2015, Rudy Burrolla ("Burrolla"), then interim Public Works Director, informed Plaintiffs that their employment with the Town was terminated. (*Id.* at 4). Burrolla did not provide any documentation regarding their termination, and did not follow the Town's policies as set forth above. (*Id.*). Plaintiffs allege Burrolla terminated Plaintiffs at the direction of his supervisor, Don Jones ("Jones"), who was the Town's Mayor. (*Id.* at 5-6). Plaintiffs allege that, at the time, Jones was exercising "final policy-making authority for the Town" and had the "authority to direct, control, and ratify" subordinate Burrolla's conduct. (*Id.* at 6).

Plaintiffs further allege that, on January 29, 2015, Jones "attended and presided over a meeting of the Mammoth Town Council during which [Jones] told [the councilmembers] present that [P]laintiffs' employment with the Town of Mammoth had been terminated." (*Id.* at 5). Plaintiffs allege that, in doing so, Jones was acting as a "managing agent" with "final policy making authority" for the Town. (*Id.* at 2; 5). However, although Plaintiffs allege Jones was acting with "final policy making authority" at this meeting, Plaintiffs also inconsistently allege that, at the same Town Council meeting, the Mammoth Town Council acted with "final policy-making authority" and "ratified" Jones' decision to terminate Plaintiffs. (*Id.* at 5).

Following the January 29, 2015, meeting, Plaintiffs allege they were given a written memo "describing the January 29, 2015 terminations as a suspension without pay pending a Notice of Recommended Termination with a meeting scheduled for February 10, 2015." (*Id.* at 5). Plaintiffs do not allege who sent this memo, and also do not allege whether a meeting in fact occurred on February 10, 2015, and, if so, what transpired during it. Plaintiffs do, however, allege that they received a letter dated February 19, 2015, notifying them that their employment had been terminated. (*Id.*). Once again, Plaintiffs do not indicate who made the termination decision, who drafted the termination letter, or when the termination decision was made.

Plaintiffs then allege that, on approximately February 25, 2015, Plaintiffs submitted written appeals regarding their termination and suspension without pay. (*Id.* at 6). Plaintiffs allege they hand-delivered their appeals to the clerk, S. Lopez, who worked at the Mammoth Town Hall on behalf of the Mammoth Town Clerk. (*Id.*). Allegedly, the Town never contacted Plaintiffs, never provided Plaintiffs with an appeal process, and never provided Plaintiffs with an appeal hearing. (*Id.*). Plaintiffs allege these failures were "the result and product of a policy, practice, and/or custom of [the Town and Jones]," and then reiterate that Jones—not the Town Council—was, at all relevant times, "vested by the Mammoth Town Council to exercise final policy-making authority." (*Id.*).

Following their termination, Plaintiffs initiated this suit, naming both Jones and

the Town and alleging violations of due process and claims of discrimination. Defendants then filed a motion to dismiss. The Court denied the motion as to Plaintiffs' claim against Jones for his alleged termination of Plaintiffs without notice and a chance to be heard, but granted Defendants' motion as to the remainder of Plaintiffs' claims. (Doc. 26). In doing so, the Court gave Plaintiffs one final opportunity to amend. (*Id.*).

Plaintiffs then filed their Third Amended Complaint (the "complaint") alleging two counts against Jones and the Town.[1] Plaintiffs' first claim is brought pursuant to 42 U.S.C. § 1983 and alleges the Town's and Jones's actions deprived Plaintiffs of their employment in violation of their due process rights under the Fourteenth Amendment. Plaintiffs' second claim is brought pursuant to 42 U.S.C. § 1981 and alleges the Town's and Jones's decisions to suspend and/or terminate Plaintiffs constituted employment discrimination based on their Mexican origin. (*Id.* at 7-8). Defendants now move to dismiss each claim.

## ANALYSIS

To survive a motion to dismiss for failure to state a claim, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. of Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (The complaint must contain "enough facts to state a claim to relief that is plausible on its face."). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[1] Plaintiffs also named "Jane Doe" a/k/a/ Orla Valberg ("Valberg"), Defendant Jones' wife, as a defendant in the complaint. (*Id.* at 2.) Plaintiffs did not make any claims or allegations against her other than noting that she is Jones's spouse. (*Id.*) "Under Arizona law, spouses must be sued jointly in order to reach assets of community property." *R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*, No. CV 12-8261-PCT-JAT, 2013 WL 2217831, at *5 (D. Ariz. May 20, 2013) (citing A.R.S. § 25–215(D); *Spudnuts, Inc. v. Lane*, 676 P.2d 669, 670 (Ariz. Ct. App. 1984)). However, since Valberg has not filed an appearance in this action or joined in Defendants' motion to dismiss, her interests will not be discussed further here.

inference that the defendant is liable for the misconduct alleged." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). When evaluating a motion to dismiss, a court accepts all factual allegations as true and draws all reasonable inferences therefrom, but need not accept legal conclusions. *See Twombly*, 550 U.S. at 555; *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2009); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296–98 (9th Cir. 1998).

**I. Count One: 42 U.S.C. § 1983 – Due Process under the Fourteenth Amendment**

To state a claim under § 1983, a plaintiff must plead (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes. *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008); *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). In regards to the second factor, plaintiffs alleging a deprivation of due process must show they have "a protected property interest under the Due Process Clause" and that they were "deprived of the property" without receiving the process constitutionally due. *Levine*, 525 F.3d at 905 (citation omitted). A civil servant can have a property interest in continued employment, *id.*, and this Court previously concluded Plaintiffs had a property interest in their continued employment here. Thus, the only question is whether either the Town or Jones deprived Plaintiffs of their continued employment without due process.

*A. The Town*

A local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *Monell v. Dep't of Soc. Servs.* 436 U.S. 658, 691 (1978). Instead, a municipality can be sued under § 1983 only if the constitutional violation was a product of a policy, practice, or custom adopted and promulgated by the city's officials. *Id.* at 690-91. Such a policy may be either formal or informal.

A formal policy is one that is "promulgated, adopted, or ratified by a local governmental entity's legislative body," *Thompson v. City of Los Angeles*, 885 F2d 1439,

1443 (9th Cir. 1989), or results when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Plaintiffs' complaint contains no factual allegations suggesting Plaintiffs were terminated in accordance with the Town's formal policies or customs. Indeed, Plaintiffs' claim is that their terminations were carried out contrary to the Town's formal policies or customs. Thus, to state a *Monell* claim against the Town, Plaintiffs must allege facts suggesting their termination was the result of an informal policy.

An informal policy—or "custom"—may be established by showing there is a permanent and well-settled practice by the municipality which gave rise to the alleged constitutional violation. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality) (internal citation omitted). Ordinarily, such a practice cannot be established by a single constitutional deprivation, a random act, or an isolated event. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). However, isolated constitutional violations can establish municipal liability in three circumstances: (1) if the person causing the violation had "final policymaking authority," *Praprotnik*, 485 U.S. at 123; (2) if a person with final policymaking authority "ratified" a subordinate's actions, *id.* at 127; or (3) if the municipality's failure to train its employees adequately amounted to deliberate indifference to the rights of persons with whom the untrained employee came into contact, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Here, Plaintiffs' theory of liability against the Town, as explained in Plaintiffs' response, is as follows: that the Town Council had final policymaking authority, that the Town Council delegated its final policymaking authority on personnel matters to Jones, and thus Jones was exercising his final policymaking authority when he made the decision to terminate Plaintiffs. (Doc. 32 at 3-5). The Court will analyze Plaintiffs' claim accordingly.

The first question is whether Jones, in fact, had final policymaking authority over employment-related decisions, particularly employee discipline. Whether an official has

final policymaking authority is generally a question of state law, and is determined on an issue by issue basis. *Pembaur*, 475 U.S. at 483; *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004); *United States v. Cty. of Maricopa, Arizona*, 889 F.3d 648, 650 (9th Cir. 2018) (citations omitted). Those with final policymaking authority may exercise that authority themselves, or they may delegate their authority to others. *Lytle*, 382 F.3d at 983. When a final policymaker delegates that authority to another, the delegee's decisions represent official policy and "could give rise to municipal liability." *Pembaur*, 475 U.S. at 483 n.12.

That said, municipal liability will not exist where the official with final policymaking authority did not delegate their final policymaking authority, but merely gave another individual the "discretion to hire and fire employees" and that individual "exercised that discretion in an unconstitutional manner." *Id.* Municipal liability will not exist because, in such a situation, the decision to act unlawfully would not be a decision of the official responsible for establishing the employment policy, but only of the individual authorized to exercise their discretion. *Id.*

Here, Plaintiff alleges, and Defendants agree, that the Town Council possesses final policymaking authority over employment matters. (Docs. 29; 30; 32). However, Plaintiffs then allege that Jones had final policymaking authority because the Mammoth Town Council "vested" its final policymaking authority in Jones. (Docs. 29; 32).[2] This is not sufficient. As this Court previously explained, "Plaintiffs must allege *facts* to show that Jones was the municipal official responsible for establishing employment policy for the town." (Doc. 26 at 6, emphasis added). And yet Plaintiffs' complaint includes no

---

[2] Plaintiffs also allege Jones had final policymaking authority because he was "a managing agent of the Town of Mammoth" and because he "Jones attended and presided over a meeting of the Mammoth Town Council during which he (Jones) told the members of the Town council present that plaintiffs' employment with the Town of Mammoth had been terminated." This is not sufficient. Plaintiffs response to Defendants' motion to dismiss also included a printout of the Town's webpage reflecting that "Jones remains in the position as Town Manager." Why Plaintiff believes this shows Jones had final policymaking authority is far from clear and does not meet the mark to establish Jones had final policymaking authority.

facts suggesting Jones had final policymaking authority as delegated by the Mammoth Town Council.

Further, it is clear that Jones was not the final policymaker, because Jones' employment decisions were constrained by personnel policies adopted by the Town Council, policies which prohibited discrimination, set forth appropriate grounds for discipline, and established the grievance and appeal process.[3] *See, e.g.*, *Praprotnik*, 485 U.S. at 127 ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality."); *Moore v. Cty. of Los Angeles*, No. 2:10-CV-07694-ODW SS, 2012 WL 3426204, at *4 (C.D. Cal. Aug. 15, 2012) (same).

Since Plaintiffs' allegations that Jones had final policymaking authority are nothing more than conclusory assertions, Plaintiffs have not stated a *Monell* claim against the Town. *See, e.g.*, *Yadin Co., Inc. v. Town of Peoria*, No. CV-06-1317-PHX-PGR, 2008 WL 906730, at *5-6 (D. Ariz. Mar. 25, 2008) (granting motion to dismiss after concluding plaintiff's allegations that individual was "final policymaker, or at least was delegated with final policymaking authority" were "simply conclusions" lacking any "facts" showing the individual "was in fact a final policymaker"); *see also Moore*, 2012 WL 3426204, at *4 (C.D. Cal. Aug. 15, 2012). And since Plaintiffs have not stated a plausible *Monell* claim against the Town, the Court will grant Defendants' motion to dismiss the Town from Count One.[4]

---

[3] Determining whether an official had final policymaking authority is a question of law to be decided by the Court. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). In making this determination, the Court may take judicial notice of the Town's personnel manual and municipal code, which Defendants submitted as exhibits to their motion to dismiss. (Doc. 30-1); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 (9th Cir. 2006) (taking judicial notice of city ordinance and other publicly-available city records); *Biggs v. Town of Gilbert*, No. CV11-330-PHX-JAT, 2011 WL 1793252, at *3 n.4 (D. Ariz. May 11, 2011) (taking judicial notice of town's personnel rules and procedures).

[4] Plaintiffs do not argue the Town's *Monell* liability is based on the Town Council's ratification, at the January 29, 2015, meeting, of Jones' decision to terminate Plaintiffs. However, even if Plaintiffs had, the facts alleged in Plaintiffs' complaint are not

*B. Jones*

Defendants also move to dismiss Plaintiffs' claim against Jones in Count One, in which Plaintiffs alleged Jones terminated them without prior notice and a chance to be heard, as required by the Town's personnel policies. On this claim, Defendants' motion to dismiss argues what follows: First, Defendants note that, in Plaintiffs' second amended complaint, Plaintiffs allegations included that "[t]he actions of Burrolla terminating Plaintiffs Frisby and Smith was, upon information and belief, taken as directed by Defendant Jones the Mayor of the Town of Mammoth as of November, 2014." Defendants then remark that the Court, in its order concluding that Plaintiffs had stated a claim against Jones in Count One, noted that this particular allegation was unclear, and ordered Plaintiffs to clarify it, if they chose to amend. (Doc. 26 at 2 n.3). Defendants then observe that Plaintiffs, despite this Court's order, did not add any clarification in their third amended complaint. Defendants argue this failure warrants dismissing Plaintiffs' claim against Jones. (Doc. 30 at 13-14).

Although Plaintiffs' failure to add the ordered clarification is concerning, the Court already concluded that, even without additional clarification, Plaintiffs had alleged sufficient facts to state a claim against Jones in Count One based on Jones' alleged failure to provide Plaintiffs with pre-discipline notice and an opportunity to be heard. (Doc. 26: "Given that Plaintiffs alleged Jones terminated Plaintiffs on January 29, 2015 depriving Plaintiffs of employment without notice and a chance to be heard, it seems Plaintiffs

---

sufficient to state such a claim. That is because, "[t]o show ratification, a plaintiff must establish that the authorized policymaker approved both a subordinate's decision and the basis for it." *Yadin Co., Inc. v. City of Peoria*, No. CV-06-1317-PHX-PGR, 2008 WL 906730, at *6 (D. Ariz. Mar. 25, 2008) (citation omitted). This requires showing the decision triggering liability "was the product of a conscious, affirmative choice to ratify the [unconstitutional] conduct in question." *Id.* (citation omitted). Here, Plaintiffs alleged no facts suggesting that, in ratifying Jones' decision to terminate Plaintiffs, the Town Council knew of Jones' alleged unconstitutional conduct and chose to ratify Jones' decision regardless. Finally, although Plaintiffs also do not argue this theory of liability in their response, Plaintiffs allege no facts suggesting the Town, Jones, or any other final policymaker was responsible for denying Plaintiffs' request to appeal their termination or suspension without pay, or that this resulted from a formal or informal Town policy.

alleged a claim against Jones for the initial verbal termination. Thus, a claim against Jones for the January 29, 2015 initial verbal termination survives Defendants' motion to dismiss."). Plaintiffs' failure to add clarification regarding whether Jones also directed Burrolla to terminate Plaintiffs that day does not alter this conclusion. Thus, Defendants' motion to dismiss will be denied as to this part.

**II.    Count Two: 42 U.S.C. § 1981 – Employment Discrimination Based on Race/National Origin**

As with the due process claim, Plaintiffs' § 1981 claim is brought against Jones and the Town. A § 1981 claim against the Town, however, must meet the same standards as a § 1983 claim, meaning that, to prevail on § 1981 claim against the Town, Plaintiffs must show harm was "caused by a custom or policy within the meaning of *Monell*." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736 (1989). As set forth above, Plaintiffs have not identified any viable basis on which to impose municipality liability against the Town for the relevant events. The focus, therefore, must be on Plaintiffs' § 1981 claim against Jones.

The same standards apply to § 1981 claims as to Title VII claims. *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). In both contexts, a complaint need not plead facts that would establish a prima facie case under the four-factor *McDonnell Douglas* framework. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

Here, Plaintiffs allege they are of Mexican race and national origin, that they were suspended without pay and ultimately terminated at the direction of Jones, who is "not a person of the Mexican race or national origin," and that other "[p]ermanent classified service employees of the Town of Mammoth not of plaintiffs' race and national origin were not subjected to the adverse treatment plaintiffs' were subjected to." (Doc. 29 at 6). These allegations are not sufficient to support Plaintiffs' claim of racial discrimination.

These mere conclusory facts, even if assumed to be true, do not suggest Jones' treatment of Plaintiffs was in any way discriminatory. For example, although Plaintiffs allege other, unknown permanent employees were not adversely-treated, Plaintiffs do not allege where these employees worked, or how these other employees are in any way connected to either Plaintiff or Jones. Nor do Plaintiffs allege anything suggesting Jones acted with discriminatory intent—for instance, that he uttered a racial slur or made racially-motivated comments, or under what circumstances the unknown employees were not adversely-treated.

In short, Plaintiffs' alleged facts simply suggest Plaintiffs belonged to one race, were terminated at the direction of someone who happened to be of another race, and that some unknown employees, employed in unknown positions somewhere within the Town of Mammoth, reporting to unknown supervisors, and with unknown connections to Jones or to Plaintiffs, who were not of Plaintiffs race, were not also terminated. These facts, taken as true, do not permit an inference that Jones' treatment of Plaintiffs was in any way discriminatory. *Cf. Swierkiewicz*, 534 U.S. at 514 (concluding plaintiff stated a national origin discrimination claim where plaintiff at least alleged his supervisor, who was French, demoted and terminated plaintiff, who was Hungarian, and then replaced plaintiff with another employee, who was also French, and also alleged additional facts of specific discriminatory acts by the supervisor and others); *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 (9th Cir. 2012) (concluding plaintiff stated an age discrimination claim where plaintiff at least alleged she was terminated while "younger workers in the same position kept their jobs"); *Maduka*, 375 F.3d at 911-13 (9th Cir. 2004) (concluding plaintiff stated a race discrimination claim where plaintiff alleged his staff privileges at the hospital where he worked were revoked after he violated hospital rules, but that other hospital staff not of his race did not face discipline and routinely received more procedural protections when subject to discipline than plaintiff received).

Since Plaintiffs alleged facts "do not permit the court to infer more than the mere possibility of misconduct," Plaintiffs' complaint has not shown Plaintiffs are entitled to

relief. *Iqbal*, 556 U.S. at 679 (citation omitted). Thus, the Court will also grant Defendants' motion to dismiss Jones from Count Two.

## III. Leave to Amend

"In dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted). Given the record before the Court, including Plaintiffs' failure to allege sufficient facts to support their claims against the Town despite this Court's warning that Plaintiffs would only be granted one final opportunity to amend, the Court concludes Plaintiffs cannot cure the deficiencies in their claims, and that dismissal of Plaintiffs' claims without leave to amend is proper.

## IV. Leave to Conduct Discovery

In their response, Plaintiffs request leave to conduct discovery to uncover the factual basis for their claims. Plaintiffs argue that, because Defendants submitted the Town's personnel manual and municipal code for this Court's review, Plaintiffs motion to dismiss must be converted to one for summary judgment, thus entitling Plaintiffs to discovery. However, a court may consider certain materials, including matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted). Furthermore, Plaintiffs are not entitled to discovery at this juncture, because discovery is only available to those whose complaints allege more than bare conclusions without supporting facts. *See Iqbal*, 556 U.S. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Since Plaintiffs have set forth no valid basis warranting discovery, their request will be denied.

Accordingly,

**IT IS ORDERED** Defendants' Motion, (Doc. 30), is **GRANTED IN PART and**

1 | **DENIED IN PART**. The motion is **GRANTED** as to the Town in Count One and to the Town and Jones in Count Two. The motion is **DENIED** as to Jones in Count One.

Dated this 31st day of August, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge